Administration 22170. Good morning, Your Honors. Stephen M. Cohen from Orfera Gentlemen's Club. May I proceed? Of course. Good morning and may it please the Court. The language of the CARES Act itself says the PP2 loans apply to any business concern prescribed under 657-82C. Based on the... Mr. Cohen, Mr. Cohen, could you hold on a second? There is some significant amount of background noise and I would ask whoever is not muted other than the judges and the two As I was saying, the express language of the CARES Act itself says that any business concern is eligible. The Sixth Circuit expressly found that the text of the PPP makes clear that every business concern meeting the statutory criteria is eligible for PPP loan during the covered period. That's DV Diamond Club. It identifies only two criteria, that it... the applicable period from February 15th of 2020 through December 31st of 2020, and it must have less than 500 employees. The intent of Congress in including all businesses becomes clear when you consider that the religious organization restriction has been lifted. The establishment clause has been an absolute bar to government subsidies, yet the PPP loan guarantees have been made available to them in these extraordinary times. The purpose of the CARES Act is to keep workers paid and employed during these unprecedented times. Since 1996, the SBA has had a policy expressed in subpart B regarding gambling and religious organizations, but the government waived the prohibitions during these extreme times on April 28th, 2020, and in enacting 15 U.S.C. 636, or actually in releasing those prescribed prohibitions that are contained within that, and on October 15th of 2020, regarding faith-based organizations, and I refer the court to D. Houston, Inc., the U.S. Small Business Administration. It's a Fifth Circuit case that was just decided October 23rd, 2020, and may be instructive. It's Westlaw 6268528. Since 2005, for the past 15 years, the felons have been paying, and the U.S. government has been happily collecting taxes from this business, which is not only a legal enterprise, but one which the United States Supreme Court in Shad has said is entitled to First Amendment protection at the same level as ideological speech. I will not... I'm sorry. Go ahead. Mr. Cohen, I guess I've got two questions. Are you making a facial challenge to the regulation? Absolutely. And not an as-applied challenge. It's a facial challenge, or is it both? It is both. It's a facial challenge. The language itself, it's got to be... Strict scrutiny absolutely applies. It is discriminatory on its face, and also as applied. Every single business, imaginable now, that every legal business, legitimate business, is entitled to this, except for gentlemen's clubs where there's exotic dancing. The... That is patently unfair. And where the government argues that, hey, we can fund, we can choose to subsidize whatever businesses we choose to. We don't have to subsidize businesses we don't want to. You know, in ordinary times, that's an interesting argument, and may be true. But now we have a situation in which the government is causing my clients' legitimate business operations to shut down. Over 70 people have been put out of work because of government mandates, and the federal government said, you know what? We're going to throw a lifeboat, a flotation buoy to these businesses that would otherwise, these legal businesses, taxpaying businesses, employers. We're throwing them a lifeboat. Under your... Sorry, go ahead. Go ahead. No, you go ahead, Jasper. I was just going to follow up on that quickly. Under your reading, why does the business even have to be legal? Where does that limitation come from? Yeah, you know, we... As far as I'm concerned. Well, we debated that, and Judge Velardo put us under the gun at an oral argument in the district court, and we revisited that in our heads. His Honor asked us, so why wouldn't a heroin dealer be entitled to it? And I think the better example, equally repugnant, would be if there was a legal, but horrifying business. Let's say the Nazi party had a printing organization, had a printing press, and they were put out of business. I would absolutely argue that they would be entitled to funding if they were a legitimate business, duly organized, and paying, and, you know, a taxpaying business. I have trouble with illegal businesses. But your reading is that there's... So the CARES Act clearly says 500 people, so we know that that's one of the limits, but then your reading doesn't have any other limitations. So I don't know where legal or legitimate comes from, other than that, you know, it kind of draws a line for you from prohibiting, you know, a drug organization from receiving... I think that that's a hypothetical that's worthy of a philosophical discussion some other time. Right now, I'm dealing with a legal business. I'm not dealing with an illegal business, so we don't have to go there. We're not illegally passing black market guns onto the market or drugs. We are engaging in... Let me follow up with maybe a more precise issue, which relates to what... Because one of the things you're trying to say is that Congress has any business. This is in connection with the APA claim, and the regulation does not say any business. But Congress did explicitly lift a number of these restrictions, right, that exist in the 7A program. So, for example, so proprietorships, non-profit organizations, and the like. And if it did that, why didn't that tell us that it understood that certain other restrictions were going to remain? I think the clear language that Congress used, any business concern, and the fact that it waived the prohibitions that it ordinarily exercises involving religious organizations and gambling casinos, I think that is very telling as to what Congress intended to do, which was to keep legal businesses afloat that the government was putting out of business. But if it thought that any business concern meant every business, why would it then go out of its way to lift the restrictions specifically on certain businesses? If you're right, why would do that? The Congress has made clear what its intention was in its language. The Small Business Administration, the agency in subpart B, in concert with Congress's intent, lifted the restrictions on gambling casinos and faith-based organizations. I'm sorry, that was my timer that but they failed to lift it with regard to exotic dancing. And this is anathema to Justice White's opinion in Shadd v. Burrough of Mount Ephraim, in which his honor says that exotic dancing is entitled to the same respect, the same treatment as ideological speech. Judge Rakoff, do you have any questions? No, I do not. Judge Park? No, thank you. Okay. Mr. Cohen, I do have one just additional question on the constitutional claim, which you also obviously make. How is this a prohibition on your business? In other words, you know, one argument might have been that this is a condition. But I'm not really sure that I understand that this is an unconstitutional condition so much as, look, you're not getting any money, period. And so it's unlike the League of Women Voters case, unlike these other cases where you are entitled to money, but we're going to tell you what you can and can't do with the money. So how do you fit into any of these cases that describe an unconstitutional condition? I think a better analogy would be if the government decided to snowplow all roads to businesses except for strip clubs. I think that would be clearly a content-based discriminatory act or decision. My client is being put out of business now because of the executive orders, some 70 issued by Governor Cuomo. Although they have jumped through all the hoops that are required, they've put up plexiglass barriers around the stage, they have distance tables, they've changed the seating at tables, they're gloving and masking their waiters, waitresses, and cooks. Now they're not allowed to have the types of entertainment that keeps them alive. The restaurant is allowed to be open, but the draw to this club is admittedly the exotic dancing. It's not nude dancing, they're wearing undergarments, but they are being forced out of business. The government has said, we're going to extend these PPP loans to everybody but you. This is a business that the U.S. Supreme Court has said on a number of occasions is entitled to First Amendment protection. You're making two arguments. You're making a legal protection argument. You're also making, I thought, a condition argument. Okay, well, you've reserved a few minutes for rebuttal. We'll hear from Ms. Dixon from the government. Good morning. May it please the Court, Courtney Dixon for the government. Congress placed the Paycheck Protection Program under the pre-existing framework of the SBA's Section 7A loan program and provided that Paycheck Protection Program loans are to be offered under the same terms, conditions, and processes as other Section 7A loans unless otherwise specified. Although Congress enumerated several differences in the CARES Act between Section 7A loans and Paycheck Protection Program loans, Congress did not amend or alter the restriction at issue here, which since 1996 has restricted the SBA from lending to businesses that present live performances of a purient textual nature. As the district court held in this case, the SBA has permissively continued to apply that restriction to loans under the Paycheck Protection Program. And as the district court held, that doesn't present any constitutional concerns. The Supreme Court has made clear that a political branch's decision not to subsidize a right does not infringe that right and is subject only to rational basis review. The plaintiffs today have suggested on numerous occasions that the government has chosen to fund every business except for gentlemen's clubs, but that's not the case. There are several pre-existing restrictions both based on the statute and regulations that Congress did not amend or alter and the SBA has continued to apply. That includes the SBA's equally long-standing restriction on loans to business consulting or, sorry, excuse me, political consulting and lobbying businesses. And the D.C. Circuit, considering constitutional challenges to that posture here, affirmed the district court's denial of preliminary injunction and stated that the plaintiffs had not shown a likelihood of success in the merits of their constitutional claims, which included First Amendment claims, including an unconstitutional conditions claim, and an equal protection claim. We think for the same reason the district court was right here to deny plaintiffs' First Amendment and equal protection cost challenges. Because again, this falls squarely within the line of Supreme Court precedent that in providing a subsidy, which the Paycheck Protection Program undoubtedly is, the political branches have wide discretion in choosing which activities they do and do not wish to subsidize. And the government fact is well within that sphere. So Ms. Dixon, this is just Lillie. There is this argument about unconstitutional conditions that I think is being made, maybe not as clearly as it might have been made, but what is your response to that? Yeah, in the Supreme Court's unconstitutional conditions cases, they've drawn a line between situations in which the government has merely defined the limits of its programs, what it is willing to fund, and then situations in which the government's gone beyond that, and it sought to leverage its funding in a way to, quote, regulate speech outside the contours of the program itself, such as the situation that was the issue in USAID or, Your Honor mentioned, the League of Women Voters cases. This just bears no resemblance to these cases. In this circumstance, government has set out categories of businesses that are not eligible for Paycheck Protection Program loans. And again, as I mentioned, the D.C. Circuit and the American Association of Political Consultants case considered this exact argument with respect to the restriction on Paycheck Protection Program loans to political consulting and lobbying groups and stated that, you know, the restriction at issue here on the SBA's lending is similar to the situation that was at issue in the Supreme Court's decision in Regan, in which the court recognized that that decision there not to provide, you know, tax-deductible status to businesses engaged in substantial lobbying was not an unconstitutional condition, and the D.C. Circuit recognized that the Paycheck Protection Program doesn't seek to leverage funding in a way to try and regulate speech outside the contours of the program. Judge Park? This is Judge Park. Could I ask you about the, on the constitutional claim, what rationale was given, I guess, back in 96 for excluding Korean sexual businesses? You still have to satisfy a rational basis review, and I'm just not sure that it's enough to say that there's to choose some over others. Is that all there is? You know, the Supreme Court, or sorry, excuse me, the Small Business Administration noted back in 1996 that it thought, you know, providing loans to businesses of Korean sexual nature wasn't the best use of its lending, its resources in, considering its constituency and its public mission. And, you know, the Supreme Court has made clear that, you know, agencies have broad discretion within the bounds established by wide discretion in deciding its lending priorities and to specifically take into account its constituency and its public mission when providing loans. So, in this context, in deciding, you know, offering special government-backed loans, the SBA has quite wide discretion here. You know, this isn't a regulation or a prohibition on anyone's speech, and the SBA... But I guess I don't even understand what rational basis was offered. It wasn't like, you know, effect on real estate prices or, you know, near, being near children or, you know, when there's more specific reasons. Here, it was just, as I, what I can see is just there's limited resources and we have to make decisions. And I don't see in that a basis for favoring or disfavoring certain types of businesses. All right. I mean, I think in the context of organizing resources and prioritizing resources, again, with the agency's broad discretion, the agency's discussion there may have been brief, but again, in the context of organizing its resourcing and providing, you know, special government-backed loans, the agency explained its decision to prioritize its resources in this manner. And perhaps, of course, you know, a more substantial justification or explanation might be required in the context of when you're regulating speech or prohibiting speech under the circumstances here. I certainly think that the SBA's explanation was sufficient. And for 25 years, the SBA has organized its loans in this manner as the SBA has also restricted its loans to, again, businesses that engage in political consulting and lobbying activities or private clubs that restrict their membership and a whole host of other things. No, I'm fine. Thank you. Ms. Dixon, I just want to make sure that I understand the government's position. Do you agree that businesses have a First Amendment right to present live performances of a query in sexual interest? We certainly don't contest that plaintiff's activity is protected by the First Amendment here. Okay. And so, if we were to find that this particular regulation imposes a substantial burden on the exercise of that right, would we have to hold it that it's unconstitutional? Well, I think, you know, that this case is controlled by Regan, Yesursa, and similar cases, which that, you know, the government's mere decision not subsidize speech cannot be equated with a penalty on that activity. And your Honor mentioned substantial burden. I think Regan and the Yesursa case are instructive in this manner. In Yesursa, the court recognized that unions would face, quote, substantial difficulties absent the ability to deduct, you know, payroll contributions for political activities. But the state had decided not to subsidize political activities in that manner. And although the unions wouldn't be able to exercise their First Amendment rights as much as they would like, the Supreme Court held that, again, it was subject to rational basis review, just as in Regan. And, again, I think, oh, please. Here, the SBA, as I understand it, did have a carve out for faith-based organizations. Is that As paycheck protection program continued throughout the summer, the SBA exercised its emergency rulemaking authority to make certain adjustments during the pandemic, you know, as we all have. And as part of that, the SBA has modified certain restrictions. The SBA, with respect to faith-based organizations, has actually announced that it doesn't believe that it wants to continue its policy of excluding faith-based organizations under not only the Paycheck Protection Program, but its general Section 7A loan program as well. And that's just a policy change on behalf of the SBA. But all of this just underscores that, again, the SBA has wide discretion here. And except where Congress explicitly made certain changes under the CARES Act, Congress otherwise left, again, SBA's authority in this space intact. And so, again, the fact that the SBA has made different policy decisions with respect to different types of organizations doesn't negate the fact that the agency has authority here. And I think Regan and Yasirsa, again, kind of answered the question that merely because the government has chosen to subsidize some speech, but not all speech, doesn't demonstrate a First Amendment violation. I'll also underscore, if I may, just the Supreme Court's language in these cases as well, that, you know, although the government can create an obstacle in the way a person exercises their First Amendment right, government's not required to remove obstacles not of its own creation. And that essentially boils down to what plaintiff's argument here is, is that, you know, the government is required to subsidize their speech at this time because they're experiencing hardships because of the pandemic. And the government is, of course, sympathetic to those hardships, but the government's not required as a constitutional matter and is not required by the CARES Act here to provide a subsidy for plaintiff's speech. And I, just to piggyback on a question that just part asked, what exactly in the context, not so much of the SBA and the 7A program, but of the CARES Act, what is the interest in refusing to fund these businesses? Well, you know, the CARES Act is making a substantial amount of money from the public available to businesses. And although Congress, you know, undoubtedly wanted to help a wide swath of businesses at this time, you know, no legislation pursues it ends at all costs. And here the agency, again, where Congress didn't explicitly modify it, the agency, when it began implementing the CARES Act, continued to apply its restrictions on its loans, which reflects, again, the agency's preexisting policies on the best use of public taxpayer funds and agency resources. And again, the agency has gone on to reconsider through the course of the pandemic, through its emergency rulemaking authority, a few of those exceptions, but the agency hasn't listed all of them as plaintiffs suggest. And it's reasonable for one Congress to leave kind of the keys in the hands of the SBA here, except for where it otherwise specified was too big differences. And it was reasonable for the SBA to, in the context of, again, significant resources, nonetheless, but finite resources to carry on its preexisting policies. Judge Park or Judge Rakoff, do you have any further questions of the government? No, thank you. Thank you. Mr. Cohen, you have two minutes of rebuttal. Thank you, sir. The government's reliance on the public mission of 1996 is misplaced. In 2020, we're dealing with an unprecedented circumstance. COVID presents unique circumstance, not just the subsidy to fund and legitimize a brand new lobbying group that was looking for tax-exempt status so it could engage in lobbying, which doesn't qualify for 501c3 tax-exempt status at the Reagan case. This is a lifeboat. It's to enable a legal and licensed business that's been operating for 15 years with over 70 employees to stay afloat while the government stops the capitalism and chills the free market in response to the virus. In support of the conclusion that Congress intended the CARES Act to be a universal... Mr. Cohen, this is just Loewe. One of the concerns I have with your position is that, separate and apart from the PPP and the CARES Act and the pandemic, you still have a provision that's part of 7A and the Small Business Administration's efforts to, or a regulation that precludes any funds under that program from going to an establishment like your clients, right? Yes. So, and I'm trying to understand what would prevent you from making the same argument after this pandemic under just the 7A program without reference to the CARES Act? The Congress has made its intention of funding all businesses clear when it made the policy change during COVID. No, I'm talking about the constitutional argument. Yeah. Constitutionally, Your Honor, there's no question that my client's engaging in constitutionally protected speech. And I may challenge, I may find myself challenging at that future time, but those aren't, the circumstances we're under right now are more dire. The government is shutting my client down. The state government is shutting my client down, preventing it from being profitable. So, I'm dealing with the PPP loans that were announced as being a lifeboat for all businesses, to use Congress's language, during these perilous times. Now, I would point the court respectfully to certain cases that have recently come down, the Fifth Circuit in D-Houston, 2020, Westlaw 626-8528, Camelot Banquet Rooms, the Eastern District of Wisconsin, 2020, 458 F-SUP 3D-1044, for a detailed analysis of exactly why it's holding that during these times, the PPP loan must be made available to businesses exactly like my client. Thank you, sir. You're also suggesting, Mr. Cohen, that not the federal government that's prohibiting you from doing anything, or stopping you, or state and local governments, is that right? Yes, the government recognizes, I'm sorry, the federal government recognizes that all 50 states are putting their clients out of business with COVID-19 coronavirus restrictions that are deemed necessary to stop the spread of the virus. Thank you very much. We will reserve decision.